United States District Court
Southern District of Texas
**ENTERED**
April 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MANUEL J. MONTEMAYOR, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 1:24-CV-146 |
| § | |
| TEXAS DEPARTMENT OF INSURANCE, § | |
| § | |
| Defendant. § | |

## ORDER AND OPINION

Plaintiff Manuel J. Montemayor, proceeding *pro se*, brings this lawsuit against the Texas Department of Insurance (TDI), a Texas state agency, alleging that TDI wrongfully terminated his windstorm permit and prohibited him from engaging in engineering services for structural windstorm inspections. Montemayor alleges a violation of his due process and property rights under the Texas and United States Constitutions, and also brings a claim for defamation under Texas state law.

TDI moves for dismissal of all of Montemayor's causes of action. (Motion, Doc. 7) For the following reasons, the Court concludes that the challenged claims do not survive the motion to dismiss.

**I.   Allegations and Procedural History[1]**

Montemayor has maintained an engineering practice in Brownsville, Texas, for over 50 years. He possesses "extensive engineering experience, including substantial experience concerning windstorm design and construction." (Compl., Doc. 1, ¶ 13)

In August 2009, TDI issued an Order that "terminated Engineer Montemayor's appointment as a windstorm inspector [and which] has interfered with [his] engineering license."

---

[1] At the motion to dismiss stage, courts accept the plaintiff's allegations as true. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Courts can also rely on facts of which the court can take judicial notice, including state court orders. *See Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995).

(*Id*. at ¶ 14)  The same month, Montemayor filed a motion for rehearing, but after TDI took no action on that motion, the TDI Order became final and appealable by operation of law.

Montemayor then initiated legal action against TDI that lasted for more than a decade.

The proceedings began in October 2009, when Montemayor filed suit in the 444th District Court of Cameron County, Texas, challenging the TDI Order and seeking damages.  TDI filed a plea to the jurisdiction.

For unknown reasons, the jurisdictional plea remained pending for more than eight years.  In January 2018, the state trial court granted it. (*See* Memo. Op., Doc. 21–4, 3)

Seven months later, Montemayor filed a petition for bill of review to reinstate the state court lawsuit.  On March 13, 2019, the trial court issued an Order Granting Defendant's Plea to the Jurisdiction *Nunc Pro Tunc*, indicating that the trial court had granted TDI's Plea to the Jurisdiction almost two months earlier, on January 23, 2019.

On May 21, Montemayor appealed the dismissal to the Texas Thirteenth Court of Appeals.  Under Texas law at the time, if Montemayor was challenging the trial court's January 23, 2019, order, he had not timely filed his notice of appeal.  If, however, he was appealing the trial court's March 13 order, his appeal was timely.

The Texas appellate court, noting that the record did not include information regarding a January 2019 ruling by the trial court, issued an Order of Abatement, directing the trial court to issue a statement of facts and conclusions of law and to clarify whether the trial court had issued an Order in January 2019 granting TDI's plea to the jurisdiction. (*See* State Court Order, Doc. 21–2, 4–6)

Almost two years elapsed.  Then, in February 2021, the state trial court issued its Findings of Fact and Conclusions of Law, explaining that it had granted TDI's plea to the jurisdiction in January 2019, but that clerical errors had required the issuance of an Order in March 2019 *nunc pro tunc*. (State Court Order, Doc. 21–2, 5 ("The [March 2019] Order Granting the Defendant's

Plea to the Jurisdiction Nunc Pro Tunc reflects the ruling of the Court granting [TDI's] Plea to the Jurisdiction on January 23, 2019."))

In May 2021, based on the state trial court's pronouncement that it had granted the Plea to the Jurisdiction in January 2019, the Thirteenth Court of Appeals dismissed Montemayor's appeal as being untimely filed. (*See* Opinion, Doc. 21–4, 9–10)

Another year elapsed.  Then, in June 2022, Montemayor filed a petition for review with the Supreme Court of Texas.

Three months later, while the petition for review remained pending, the trial court issued Amended Findings of Facts and Conclusions of Law (Doc. 21–3).  In this ruling, the trial court corrected its initial findings and declared that the court had granted the Plea to the Jurisdiction on March 13, 2019, rather than in January 2019.  The record does not make clear whether the Supreme Court of Texas received notice of the Amended Findings of Fact and Conclusions of Law.

In June 2024, the Supreme Court of Texas denied Montemayor's petition for review. (*See* Denial of Petition for Review, Doc. 21–5)

Four months later, Montemayor filed the current lawsuit.

**II.    Analysis**

The Court construes Montemayor's *pro se* complaint broadly. *See Haines v. Kerner*, 404 U.S. 519 (1972).

Montemayor presents two causes of action: (1) "violation of plaintiff's due process rights and property rights without authority," based on the United States and Texas Constitutions; and (2) defamation under Texas law.[2] (Compl., Doc. 1, 8, 11)

---

[2] Construing Montemayor's Complaint liberally, the Court presumes that Montemayor brings his federal constitutional claims pursuant to 42 U.S.C. § 1983.  As to Montemayor's claims based on alleged violations of the Texas Constitution, the Court is unaware of an analog under Texas law to Section 1983. *See Bagg v. Univ. of Texas Med. Branch at Galveston*, 726 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) ("We acknowledge that Texas has a strong bill of rights, but we can find no Texas statute or case that provides a citizen the kind of redress afforded by 42 U.S.C. § 1983 or by *Bivens* []. There is no state 'constitutional tort.'").  Therefore, the Court will primarily address Montemayor's federal constitutional claims as brought under Section 1983, as well as Montemayor's state defamation claim.

In connection with his constitutional claims, he alleges that TDI acted wrongfully by revoking his windstorm inspection permit in 2009, and then through its fraudulent conduct in related state court proceedings in 2021.[3] He alleges that he possessed vested property rights in his professional engineer's license and ability to conduct windstorm inspections, and that TDI's conduct stripped him of those rights. He requests that the Court set aside the 2009 TDI Order that revoked his windstorm inspection permit, as well as any adverse court decisions related to his challenge of the 2009 TDI Order. In addition, he seeks monetary damages.

As to his state-law tort claim, Montemayor alleges that TDI's "false and defamatory action and statements contained in the subject March 5, 2009, Cease & Desist Order, and TDI's August 9, 2009 Order" caused him to "endure[ ] shame, embarrassment, humiliation, and mental pain and anguish." (*Id.* at ¶ 38) In connection with this claim, he seeks compensatory damages, exemplary damages, and a cease and desist order prohibiting TDI from continuing in "such behavior." (*Id.*)

### A. Standards of Review

TDI seeks dismissal under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). In particular, the agency presents three grounds: (1) sovereign immunity; (2) statute of limitations; and (3) the *Rooker-Feldman* doctrine.

Under Rule 12(b)(1), a court must dismiss an action for lack of subject matter jurisdiction when the court possesses no statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When a party moves under multiple provisions of Rule 12(b), "the court should consider the Rule 12(b)(1)

---

[3] Montemayor does not allege in his Complaint that TDI committed fraud in connection with the state-court proceedings. However, in his Response, he requested leave to amend his Complaint and then submitted a Supplemental Response in which he alleges that "TDI has fraudulently used a phantom order that never existed to mislead the Texas Courts." (Supp. Resp., Doc. 21, 2) While courts grant leave to amend freely, they decline to do so when the proposed amendment would be futile. *See Forman v. Davis*, 371 U.S. 178, 182 (1962). As Montemayor proceeds *pro se*, and to consider his request for leave to amend his live pleading, the Court will consider the new allegations that he presents in his Supplemental Response. As explained in this Order and Opinion, the consideration of those allegations still leads to the dismissal of Montemayor's claims. As a result, granting Montemayor leave to amend his Complaint to add these allegations would be futile.

4 / 13

jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "In reviewing a motion to dismiss for lack of jurisdiction, the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Sissom v. Univ. of Texas High Sch.*, 927 F.3d 343, 348 n.1 (5th Cir. 2019) (internal quotation marks omitted).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). A plaintiff satisfies the facial plausibility standard by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations in the complaint are not required to be thoroughly detailed, but must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The court considers only the allegations in the complaint and must accept them as true, viewing them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). If the allegations are sufficient "to raise a right to relief above the speculative level," the court will not dismiss the cause of action. *Twombly*, 550 U.S. at 555.

### B. Sovereign Immunity

TDI argues that the doctrine of sovereign immunity deprives the Court of subject matter jurisdiction over Montemayor's constitutional and defamation claims. For the following reasons, the Court agrees.

The doctrine of sovereign immunity based on the Eleventh Amendment of the United States Constitution bars private lawsuits against nonconsenting states in federal court and, relatedly, prohibits lawsuits against state agencies that amount to lawsuits against a state. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) ("Sovereign immunity is the

privilege of the sovereign not to be sued without its consent."); *Ford Motor Co. v. Dep't of Treas.*, 323 U.S. 459, 463–64 (1945) (barring lawsuits in which the state is a real party in interest, despite not being a named defendant). When the doctrine applies, it protects the state against claims based on alleged violations of constitutional rights under the United States and Texas Constitutions, as well as against tort claims based on Texas law. *See, e.g.*, *Walker v. Livingston*, 381 F. App'x 477, 479 (5th Cir. 2010) (concluding that sovereign immunity barred claims under Section 1983 and Texas state law against defendants in their official capacity); *City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) (finding a Texas state agency immune from suit in federal court based on Eleventh Amendment sovereign immunity); *see also Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *7 (5th Cir. Jan. 6, 2023) (concluding that to "the extent that the Plaintiffs' claims are for violations of state law they are barred by the Eleventh Amendment").

Texas state agencies receive the protections of Eleventh Amendment sovereign immunity. *See Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 280–81 (5th Cir. 2002) ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity.") (internal citation omitted). Of relevance to Montemayor's lawsuit, TDI functions as a state agency under Texas law. First, the Texas Local Government Code defines "[s]tate agency" as any entity expressly made subject to Chapter 325. *See* TEX. LOC. GOV'T CODE § 325.002. And second, the Texas Insurance Code establishes that "[t]he Texas Department of Insurance is subject to Chapter 325, Government Code (Texas Sunset Act)." TEX. INS. CODE § 31.004(a).

Sovereign immunity does not control when the state has waived it, Congress has expressly abrogated it, or an exception to the doctrine applies. *See Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Here, Texas has expressly declined to waive its immunity to suit in federal court under the Eleventh Amendment. *See Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996) (deciding that the Texas Tort Claims Act does not waive

Eleventh Amendment immunity in federal court). And Montemayor does not claim that Congress abrogated the doctrine. As a result, unless Montemayor can demonstrate that an exception applies, TDI is entitled to sovereign immunity as to the causes of action against it.

Montemayor argues that TDI's fraudulent conduct in state court proceedings strips the agency of sovereign immunity protection. (Supp. Response, Doc. 21, 3) The Court disagrees. Montemayor cites no authority creating an exception to Eleventh Amendment sovereign immunity based on alleged fraudulent conduct. The Court has located no such authority, and Congress has not expressly abrogated state sovereign immunity under Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 339–40 (1979).

In addition, although Montemayor does not raise the issue, the Court finds inapplicable the exception established in *Ex parte Young*, 209 U.S. 123 (1908). That exception governs in "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). "To fall within the *Ex parte Young* exception to sovereign immunity, however, a plaintiff must name individual state officials as defendants in their official capacities." *Id.* (finding that although plaintiff had asserted claims for injunctive and declaratory relief, he could not utilize the *Ex parte Young* exception because he named only state entities, and not their individual officers, as defendants); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) (suits based on state law in federal court seeking relief, whether prospective or retrospective, do not meet the *Ex parte Young* exception to Eleventh Amendment immunity). As Montemayor seeks relief only against TDI as a state entity, and names no individuals as defendants, the *Ex parte Young* exception has no bearing in this lawsuit.

As no exception to the sovereign immunity doctrine applies to the present lawsuit, TDI is entitled to its protections as to Montemayor's claims.

### C. Statute of Limitations

TDI also contends that under Rule 12(b)(6), the statute of limitations bars Montemayor's causes of action, which he bases on TDI's 2009 Order and TDI's conduct in the state court proceedings.

Beginning with his federal constitutional claims, Section 1983 does not contain its own statute of limitations. Instead, a federal court applies the forum state's general personal injury limitations period. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989). In Texas, the applicable period of limitations is two years. TEX. CIV. PRAC. & REM. CODE § 16.003; *see King-White v. Humble Indep. School Dist.*, 803 F.3d 754, 759–61 (5th Cir. 2015); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 n.5 (5th Cir. 1995). Thus, a two-year limitations period governs as to Montemayor's Section 1983 claims.

And as for Montemayor's defamation claim, Texas law provides a one-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.002.

Federal law determines when Montemayor's causes of action accrued. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original). A limitations period commences when an aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation. *Newman v. Coffin*, 464 F. App'x 359, 362 (5th Cir. 2012). "The requisite knowledge that a plaintiff must have to begin the running of the limitations period is merely that of the facts forming the basis of his cause of action, . . . not that of the existence of the cause of action itself." *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) (internal quotation marks omitted).

Montemayor bases his claims on two events: TDI's 2009 Order and TDI's alleged fraudulent conduct in state court. Regarding the 2009 Order, to the extent that it wrongfully injured Montemayor, he demonstrated knowledge of the wrong no later than October 2009, when

he filed a lawsuit in a Texas state court challenging the order. (*See* Compl., Doc. 1, ¶ 18)  As a result, to the extent that Montemayor possessed a cause of action under Section 1983 or under state law for defamation based on the 2009 TDI Order, he had to file the lawsuit within the two and one-year statute of limitations, respectively, for those claims.  He failed to do so, not filing this lawsuit until October 2024.

As to the timing of Montemayor's allegations about TDI's fraudulent conduct in state court proceedings, the Supplemental Response that includes those allegations lacks detail and clarity.  He alleges only that TDI "fraudulently used a phantom order that never existed to mislead the Texas Courts into failing to consider and rule on Plaintiff's case on the merits, and instead dismiss his lawsuit in state court based on a lie, the non-existing phantom order." (Supp. Resp., Doc. 21, 2)  Montemayor does not specify the nature of TDI's alleged fraudulent conduct, or when he became aware of this conduct.  At most, he appears to allege that TDI "promulgated and had the lower court sign" the initial Findings of Fact and Conclusions of Law that the state court issued in response to the state appellate court's request. (Supp. Resp., Doc. 1, 2–3)  In any event, construing the Complaint liberally, the Court accepts for purposes of the limitations period that Montemayor first became aware of TDI's conduct only when the trial court issued its original Findings of Fact and Conclusions of Law (Doc. 21–2), which occurred on February 23, 2021.  At that time, Montemayor knew that the state court had issued an order that Montemayor believed to be wrong and that allegedly injured him.  Based on that date, Montemayor had until February 23, 2022, to file his defamation claim, and until February 23, 2023, to present his Section 1983 action.  He did not file this lawsuit until October 2024, well beyond those limitations periods.

### D.  *Rooker-Feldman* Doctrine

Based on TDI's alleged wrongful conduct, Montemayor requests that the Court declare the 2009 TDI Order and the state court judgments null and void. (Compl., Doc. 1, 14)  In its Motion, TDI argues that the *Rooker-Feldman* doctrine bars such relief and requires the dismissal of

Montemayor's claims under Rule 12(b)(1). The Court agrees, to the extent that Montemayor requests that the Court render null and void state-court judgments.

The *Rooker-Feldman* doctrine precludes lower federal courts "from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The narrow jurisdictional bar applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022) (clarifying that *Rooker-Feldman* does not apply unless the challenged state court judgment is final); *Gross v. Dannatt*, 736 F. App'x 493, 494 (5th Cir. 2018) (quoting *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012)) (explaining that *Rooker-Feldman* applies when "a party suffer[s] an adverse final judgment rendered by a state's court of last resort"). In Texas, state court proceedings result in a final judgment if the Supreme Court of Texas denies a party's petition for review. *Compare Gross*, 736 F. App'x at 495 (concluding that *Rooker-Feldman* did not apply because the petition for review remained pending before the state high court), *with Batista v. Carter*, No. H-19-113, 2019 WL 1586773, at *3 n.7 (S.D. Tex. Apr. 12, 2019) (citing *Gross*, 736 F. App'x at 494) (applying *Rooker-Feldman* because the Supreme Court of Texas had denied the petition for review), *aff'd*, 796 F. App'x 209 (5th Cir. 2020).

The doctrine does not prohibit a plaintiff from presenting all claims related to prior state court proceedings, but instead bars a claim to the extent that the plaintiff requests relief that directly or implicitly requires the reversal or nullification of a final state-court judgment. *See Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011) (finding that *Rooker-Feldman* barred a claim that a state foreclosure judgment was procured through fraud because "reversal of the state court's foreclosure judgment would be a necessary part of the relief requested"); *Turner v. Chase*, 334 F. App'x 657, 659–60 (5th Cir. 2009) (finding that *Rooker-*

*Feldman* barred a federal suit in which the plaintiff alleged fraud and sought "to nullify the state-court judgment averse to her"); *Ill. Cent. R.R. Co.*, 682 F.3d at 391 ("[T]he doctrine usually applies only when a plaintiff explicitly attacks the validity of a state court's judgment, though it can also apply if the plaintiff's federal claims are so inextricably intertwined with a state judgment that the federal court 'is in essence being called upon to review the state court decision.'") (internal citations omitted). The doctrine does not prohibit an independent claim arising from prior state-court litigation, as long as the claim does not require the overturning of the state-court judgment. For example, courts have allowed claims for damages based on allegations that the prevailing party in state-court litigation obtained the favorable outcome through fraudulent statements. *See Drake v. St. Paul Travelers Ins. Co.*, 353 F. App'x 901, 905 (5th Cir. 2009) (finding *Rooker-Feldman* to be inapplicable because the plaintiff was not inviting the district court to review and reject the judgment of the Texas state courts and instead only sought damages for defendants' alleged fraudulent statements). And courts have declined to apply the *Rooker-Feldman* doctrine as to claims seeking relief distinct from the reversal of the prior state-court judgment. *See, e.g.*, *Mosley v. Bowie Cnty. Tex.*, 275 F. App'x 327, 328–29 (5th Cir. 2008) (finding that *Rooker-Feldman* barred a claim seeking to void a child support order, but not a claim that state government defendants violated the federal plaintiffs' constitutional rights in the course of enforcing the order); *Ill. Cent. R.R. Co.*, 682 F.3d at 391 (finding that *Rooker-Feldman* did not bar a claim that the state-court plaintiffs' lawyers obtained a settlement judgment through fraudulent misrepresentations).

Turning to the present case, the Court finds the application of the *Rooker-Feldman* doctrine straightforward. Montemayor requests that the Court declare the "judgment against Plaintiff Manuel J. Montemayor in Cause No. 2009-10-5767-H, Cause No. 2018-DCL-04438-H, Appeal No. 13-19-00249-CV and Case No. 22-0293, null and void, in all respects, and in particular that the TDI 2009 Order may not serve as any basis for any sanction against Engineer

Montemayor's license." (Compl., Doc. 1, 14) In 2022, Montemayor filed a petition for review with the Supreme Court of Texas, seeking the reversal of the dismissal of Montemayor's case by the Texas Thirteenth Court of Appeals. The Texas high court denied the petition for review. (*See* Denial of Petition for Review, Doc. 21–5) In other words, Montemayor asks the Court to nullify a state-court judgment that he unsuccessfully challenged all the way to the Supreme Court of Texas. Under these alleged facts, *Rooker-Feldman* doctrine governs and bars Montemayor's claims to the extent that he seeks reversal or voiding of the state court judgments.

Montemayor argues that in recent years, federal courts have consistently declined to follow the doctrine. (Response, Doc. 11, 2 (citing *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021)) But while courts have found the doctrine inapplicable based on the specific allegations at issue, or have noted that the doctrine's application is narrow, they have not denied the validity of the doctrine itself. And the Fifth Circuit continues to re-affirm the doctrine's validity in recent decisions. *See, e.g.*, *Miller v. Dunn*, 35 F.4th 1007, 1009 (5th Cir. 2022); *Gilani v. Wynn Las Vegas, LLC (In re Gilani)*, No. 23-40477, 5–6 (5th Cir. Jan. 30, 2024).

As a result, the Court concludes that the *Rooker-Feldman* doctrine bars Montemayor's request that the Court declare null and void the state-court judgments of which he complains.

### III. Conclusion

For these reasons, it is:

**ORDERED** that Defendant Texas Department of Insurance's Motion to Dismiss (Doc. 7) is **GRANTED**;

**ORDERED** that Plaintiff Manuel J. Montemayor's motion for leave to amend his Complaint is **DENIED**; and

**ORDERED** that Plaintiff Manuel J. Montemayor's causes of action are **DISMISSED WITH PREJUDICE**.

Signed on April 17, 2025.

_____
Fernando Rodriguez, Jr.
United States District Judge